Moore
vs.
Harton.

[a] 1 Stew. 17.

[b] Aik. D. 261.

---

## GABRIEL MOORE vs. BURWELL HARTON.

*Error from Madison Circuit Court*—Before the Hon. JOHN M. TAYLOR.

In debt on a penal bond, given to enjoin a judgment, the jury may assess the costs of the judgment in damages, though the same are not specified in the condition of the bond.

The judgment in such action may be entered either for the amount of the penalty, to be discharged by the sum assessed by the jury; or for the amount of the damages.

An injunction bond, conditioned "to be in force if the injunction be dissolved," is valid as to form.

This was an action of debt, brought in the Circuit Court of Madison county, against Moore, the plaintiff in error, as

surety to an injunction bond. ' The penalty of the bond was twelve thousand dollars. The condition recited, that Harton, the defendant in error, had obtained a judgment against one Scales for $567, and likewise a judgment against one Phillips, the debtor of Scales, by process of garnishment; that Scales had obtained an injunction which restrained Harton from collecting the aforesaid sum on either judgment. The only condition was, that the obligation should be in full force, if the injunction should be dissolved. The declaration averred, that Harton recovered the sum of $46 57 as costs in the action against Scales, and $13 75 as costs in the garnishment against Phillips. The breach assigned, was the non-payment of the sum named in the condition of the bond, and of these costs. After oyer craved, the defendant below demurred, which demurrer was overruled. The defendant below refusing to plead, a writ of enquiry was executed, and the jury included in the assessment of damages, the costs before mentioned. The court gave judgment accordingly.

Moore took a writ of error to this court, and assigned for error—

1st. The decision of the court overruling the demurrer.

2d. The rendering of judgment for the whole amount found by the jury as damages, part of that amount being the costs of the enjoined judgments, which costs were not specified in the condition of the bond.

3d. The judgment being for a sum less than the penalty of the bond, when it should have been for the penalty, to be discharged on the payment of the damages assessed.

HOPKINS, for Plaintiff in error.

HUTCHISON, contra.

The bond is peculiar. It is a penal obligation with condition reciting the injunction of a recovery against the principal obligor, and condemnation against his garnishment, and

Moore
vs.
Harton.

not to be void, as is usual, on payment of the money suspended on the event of the dissolution of injunction ; but *to be in force*, if the injunction should be dissolved.   Yet it is valid. In Britain, when a pecuniary judgment or decree is enjoined, the money is brought into court, to abide the determination on the bill, the chancellor himself protecting the creditor.   Here a security is substituted.   And in Alabama, the statutes defining equity jurisdiction anterior to the bond, though they had not prescribed, had pre-supposed such substitute, and the power to direct it.   Thus the chancellor, in dissolving an injunction, might award six per cent. damages, if he deemed it dilatory.   If prior to the injunction, the officer had collected the whole or part, and had not paid over to the creditor, he was directed to pay it back to the debtor, if he obtained injunction, and on the dissolution of the injunction, the creditor should not have execution until he gave bond to refund, if the complaining debtor should get relief. These, tacitly indicated a delay, judicially occasioned, and a security of some sort, other than a payment in court, afforded to him, delayed.   The act of 1826, which followed the bond in question, recognises an injunction bond as a known security, by converting it into a statutory judgment, and declaring the measure of liability on it.   The uniform practice of requiring a bond, instead of payment in court, arose out of an obvious dictate of justice.   When the power of the chancellor to bring a judgment into scrutiny, was to be exerted, and that too, on an *ex parte* showing—when delay was thence inevitable—when a total insolvency of the complaining debtor *might* intervene—and when the safety of the fund, by deposit in court was to be omitted, it was plain that the creditor's claim should be ultimately secured, and the loss, vexation and expense of the delay and litigation, compensated, if it should be found, that in conscience, as at law, the complaint against the demand was unfounded.   Equity then, apart from legislation, demanded a security, and just

3

Moore
vs.
Harton.

such security as the declaration asserts the bond in question to be. If it had not been based on a fiat, or had been variant from the fiat given, that should have been pleaded. As therefore, nothing intrinsically wrong, or prohibited, was at its origin, and as there was nothing to limit the chancellor's power in requiring it, but justice, if the recovery upon it cannot be made to transcend justice, it must be valid. What then was recoverable on it, on the dissolution of the injunction ? The whole penalty ? That is its liberal import, indeed, but surely not its legal effect. It is a penal bond. It mentions a judgment delayed, that is of less amount than the penalty. Beyond the amount of the judgment, which would include the interest and costs, together with the costs of the chancery suit, and the damages to be awarded for delay, the penalty could not be enforced, and was never intended to be recovered. Its very nature and function were to cover a less amount than the penalty. There was a pre-existing statute, regulating recovery on a penal bond ; and this bond, if not within its letter, was within its spirit. The debt actually due, with interest and the costs of the judgments enjoined are all that are demanded in the declaration, for breach of the condition of the bond. No damages for delay were awarded ; and as the costs of the chancery suit had not accrued, *eo nomine*, at the dissolution of the injunction, those were not claimed. The measure of recovery, therefore, was correctly assumed by the pleader. If the obligor had been put to oyer of the condition, what would he have pleaded ? What performance, what matter of avoidance ? The fact was otherwise. That no damage had been occasioned by the equity suit ? Such was not the matter expressed, and beside, the fact was different. No such indefinite security was intended, and the security given, though it did not expressly declare that the penalty should be void on the payment of the amount of the judgment, yet, as the delay of the judgment is expressed as the cause of the injunction, and as has been shown, the payment of its amount

and the costs, ought to extinguish the penalty; and more-
over, as less cannot satisfy justice, it was not error to over-
rule the demurrer to the declaration. The declaration avers,
that the costs of the original suit, and of the garnishment,
were involved in the injunction, and it was proper to include
them. That there was error in the judgment, *because it
did not give and take away the penalty in the same sentence,*
might have been debatable six centuries ago.

By Mr. Justice THORNTON:

This was an action of debt upon a penal bond, or bond with
a condition annexed, executed by one Henry Scales, and the
defendant in error, as his surety, as a condition precedent,
prescribed by a chancellor before enjoining certain judg-
ments in behalf of the defendant in error. The plaintiff has
assigned as error in the proceedings below—

1st. The overruling his demurrer to the declaration.

2d. Giving judgment for the whole amount found by the
jury as damages, part of that amount being made up of
costs recovered in the enjoined judgments, which costs
were not specified in the condition of the bond.

3d. The judgment being for a less sum than the penalty of
the bond, when it should have been for the penalty, to be
discharged by the payment of the damages assessed.

The demurrer is contended to have been well taken, on
account of the illegality of the bond, which by oyer granted,
is spread upon the record. The bond is said to be void,
because it is considered to have full force and effect, if the
injunction be dissolved, and this would enable suit to be
brought upon it, and nominal damages recovered, though the
amounts of the judgments enjoined had been paid before the
bringing of the action. In this argument, the premises are,
that nominal damages, carrying the costs, might be recover-
ed by suit on the bond, though prior to its institution, the
judgments enjoined had been discharged. I do not consi-
der it very material how this may be, as, even if granted,

the conclusion drawn, viz: that the bond is void, does not follow. At this day, under the united influence of that spirit of emancipation from the shackles of technical rules, which generally prevails, and of our act of 1824, like the 8 and 9 of *William*, 3d c. s. 1, regulating proceedings on penal bonds. I would not readily admit, that even nominal damages could be recovered, if before the institution of suit on the bond, the money which it was intended to secure, had been paid. I would incline to consider the bond as wholly discharged in such case. It is in truth, and substance, like a bill single to pay money, which if paid anterior to suit brought, though after breach of the promise, would, at this day, be successfully resisted, even as to costs, if afterwards put in suit. But if it were not so, and nominal damages could be recovered, yet I cannot conclude, that therefore, the bond would be void. The bond sued here, is not a statute bond, whose form or substance is prescribed. It is one taken in pursuance of an order of the chancellor, who imposed its execution as a condition, precedent to the arrest and suspension of execution upon the judgments recited in the bond. The features of this bond, which is the creature of the chancellor, may be fashioned after his own sense of equity, and if it contain an onerous or oppressive condition, leading to the consequences contended for, yet we could not undertake to declare it void for that cause, when sued against the obligors. The chancellor imposed its execution, as the terms upon which the plaintiff's judgments were to be suspended. The defendant accepted them, and cannot now be permitted for the cause alleged, to avoid the indemnity so afforded. Having determined the bond to be valid, the next question presented, and which is raised by the second assignment of error, is as to the amount of damages found by the verdict, and adjudged to the plaintiff. A true understanding of the nature and office of the bond, will conduct us to a correct conclusion upon this subject. The office of the bond is to furnish a complete security to the plaintiff in the enjoined

judgment, which cannot be, unless it extend the whole length of the injunction. It is substituted for the payment of all the money recovered, which was anciently required, and ought to be an effectual security for at least that amount. The bond in this case, though not very skilfully drawn, does, I think, by a fair construction, reach to this extent. It is composed, first of the ordinary direct obligation to pay the penal sum of twelve hundred dollars. A recital of the two judgments enjoined, as being for $567, that an injunction had been prayed and obtained, restraining the plaintiff from collecting the amount of said judgments, and of a condition in the following words, to-wit: " Now, the condition of the above obligation is such, that if said injunction should be dissolved, then the above obligation to be in full force, otherwise, to be void." The argument of the objection is, that this recital of the judgments as being for $567, though the judgments were, in truth for more, and were enjoined to their whole extent, limits the recovery of damages, to the amount so recited. I cannot concede this effect to the mere recital in the bond of the obligor. The bond is for twelve hundred dollars, and the condition is, that the bond shall be in full force, if the injunction be dissolved. The literal obligation of this bond, is, to pay the sum of twelve hundred dollars, it having become absolute by the dissolution of the injunction, (and such would be the recovery at common law.) The chancellor, however, always interposed and restrained the recovery to the amount equitably due. The object of the statute above cited, was to effect before a jury in the common law courts, and in one suit, what the chancellor would otherwise be invoked to decree. So, that when we determine what is equitably due on this bond, we arrive at what amount of damages should have been allowed by the jury. In this view, we think that the costs of the judgments enjoined, should constitute a part of these damages. The last error assigned, relates to the manner of entering the judgment; with regard to which, we do not consider it material, whether it be for the

Moore
vs.
Harton.

amount of the penalty to be discharged, by the sum assessed by the jury, or directly, for the last named amount; they being substantially the same.

The judgment below is affirmed.